# EXHIBIT I

07-CV-00411-APPL

Dockets.Justia.com

Gregg D. Trautmann, Esq.
TRAUTMANN & ASSOCIATES, L.L.C.
262 East Main Street
Rockaway, New Jersey 07866
(973) 316-8100
Attorney for Plaintiff

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUZANNE THOMSON and ROBERT TRAUTMANN, on behalf of themselves and all others similarly situated<br><br>        Plaintiff<br><br>        v.<br><br>MENU FOODS INCOME FUND (A Corporation organized under the laws of Canada); JOHN DOES 1 – 100 (Fictitious names for the person(s) and/or entities responsible for the damages complained of by the Plaintiffs herein)<br><br>        Defendants | Civil Action No.: 2:07-cv-<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

## Civ. Rule 10.1 Statement

**PLAINTIFF:**

SUZANNE THOMSON

3379 Route 46, Apartment 9-F, Parsippany, New Jersey, 07054

ROBERT TRAUTMANN

3379 Route 46, Apartment 9-F, Parsippany, New Jersey, 07054

**DEFENDANTS:**

MENU FOODS INCOME FUND, 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

## JURISDICTION

1. Plaintiffs bring this action against defendants to redress violations of the statutes of the State of New Jersey and the common law.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1332.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391.

4. Service may be effected upon the defendant pursuant to the relevant portions of the Hague Convention.

## CLASS STATUS

1. The Plaintiffs bring their claims individually and on behalf of all others similarly situated.

2. The class consists of owners of pets throughout the United States who purchased tainted foods manufactured by the Defendant, subsequently fed the tainted foods to their pets, causing illness to their pets for which the class members were forced to seek veterinarian care for the pets or causing death to the pet.

3. The class is so large that it is impracticable to join all members of the class in a single lawsuit.

4. There are questions of law common to the claims of all members of the class.

5. There are questions of fact common to the claims of all member of the class.

6. The claims of the named Plaintiffs herein are typical of the claims of the members of the class.

7. The prosecution of separate claims by the members of the class would create an unreasonable risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

8. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

9. A class action lawsuit is the superior method of handling the claims of the members of this class.

## FACTS COMMON TO ALL COUNTS OF COMPLAINT

1. The named Plaintiffs herein are husband and wife and have at all relevant times been residents of the State of New Jersey.

2. The Defendant herein is, upon information and belief, a Canadian corporation organized under the laws of that nation for the purpose of the manufacture and sale of pet foods.

3. The Defendant manufacturers pet foods that are sold under various brand names throughout the world.

4. The Plaintiffs are the owners of a purebred Himalayan cat that is kept as a pet, which was purchased in October 2006.

5. Since the time the cat was purchased, the Plaintiffs have fed her "cuts and gravy" style cat food manufactured by the Defendant and sold under the Iams brand name.

6. On or about Tuesday, March 13, 2007 the Plaintiff's cat began showing signs of illness including experiencing abdominal pain (as evidenced by loud cries when touched in that area) as well as sever and consistent diarrhea.

7. The following day, the cat's illness progressed and the cat refused either eat any food or drink any water, continued experiencing abdominal pain as well as sever and consistent diarrhea, and became lethargic.

8. The symptoms demonstrated by the cat owned by the named Plaintiffs herein are the same as reported by members of the plaintiff class throughout the United States.

9. On Thursday, March 15, 2007 the Plaintiff's sought veterinarian treatment for their cat.

10. At that time the veterinarian noted the abdominal pain and performed X-ray examinations to rule out any obstruction or foreign object ingestion.

11. The X-ray examination revealed that the cat's gastrointestinal tract was free from any blockage or other foreign object.

12. Because of the non-specific nature of the cat's symptoms, the veterinarian prescribed a medication for possible parasites and advised that if the cat's condition did not improve within the subsequent 48-hour period, further, more aggressive steps would need to be taken.

13. For the 48-hours subsequent to the veterinarian care received by the cat, the cat's condition did not improve.

14. On Saturday, March 17, 2007, a family member notified the Plaintiffs that the brand and style food that they fed to their cat had been recalled by the manufacturer.

15. The press release issued by the Defendant on March 16, 2007, indicated that the "cuts and gravy" style cat food was being recalled.

16. The reason for the recall was complaints about renal failure in pets who ingested the "cuts and gravy" style food.

17. The signs of renal failure include the same symptoms shown by the Plaintiff's cat.

18.    Immediately upon learning about the recalled food and the potential renal failure in
their cat, the Plaintiffs rushed their cat to an emergency veterinarian hospital for
treatment.

19.    The cat was noted as being severely dehydrated by the staff at the emergency
veterinarian hospital.

20.    The cat was noted as having non-specific signs of infection and was immediately
placed on intravenous fluids and medications.

21.    The cat was hospitalized and monitored for approximately 24 hours.

22.    The Plaintiffs herein expended over $1,000.00 for the care of their pet as a direct
result of the animal ingesting tainted food manufactured by the Defendant.

23.    The damages suffered by the Plaintiffs herein are similar to all members of the
plaintiff class throughout the United States.

24.    The aggregate claims of the members of the plaintiff class exceed $75,000.00.

## COUNT ONE
### (Product Liability)

25.    The Plaintiffs repeat and reallege all of the allegations and statements set forth in
each of the preceding paragraphs as if set forth herein at length.

26.    The Defendant is a manufacturer of pet foods, which include the pet food purchased
by the Plaintiff that was subsequently fed to the Plaintiff's pet cat as well as the pets
belonging to all other members of the plaintiff class.

27.    The pet food manufactured by the Defendant contained a material defect at the time it
was manufactured.

28.  Upon information and belief the material defect was from an ingredient known as "whey gluten."

29.  Upon information and belief the defect contained within the "whey gluten" was a poison known as "aminopterin."

30.  Aminopterin is used in some countries as rat poison.

31.  The inclusion of the tainted ingredient is a deviation from the formula specifications of the pet food.

32.  The inclusion of the tainted ingredient is a deviation from the performance of standards of the Defendant.

33.  The inclusion of the tainted ingredient is a deviation from identical units manufactured by the Defendant using the same manufacturing specifications and/or formula.

34.  The defect was present in the product prior to the product leaving the Defendant's control.

35.  The Plaintiffs herein together with all other members of the plaintiff class are reasonably foreseeable users of the Defendant's products.

36.  The Plaintiff's herein, along with all other members of the plaintiff class, used the Defendant's product in a reasonably foreseeable fashion.

37.  The pet food manufactured by the Defendant was not reasonably fit, suitable, or safe for its intended purpose.

38.  As a result of feeding the pet food manufactured by the Defendant which contained aforementioned product defect, the Plaintiffs, along with all other members of the Plaintiff class, have been damaged.

39.   The Defendant is strictly liable for defects contained in the products it manufactures.

**WHEREFORE**, the Plaintiffs, on their own behalf and on behalf of all others similarly

situated, demand judgment against the Defendant on COUNT ONE of their Complaint, for:

     a.    Compensatory damages;

     b.    Consequential damages;

     c.    Incidental damages;

     d.    Attorneys fees, costs, costs of investigation, litigation and interest;

     e.    For such further relief as the Court deems equitable and just;

## COUNT TWO
### (Breech of Implied Warranty of Fitness for Particular Purpose)

40.   The Plaintiffs repeat and reallege all of the allegations and statements set forth in

each of the preceding paragraphs as if set forth herein at length.

41.   At all times relevant the Plaintiffs and all other members of the plaintiff class used the

pet food manufactured by the Defendant as food for their pets.

42.   The pet foods purchased by the Plaintiffs and all other members of the plaintiff class

were sealed in the original packaging from the Defendant at the time they were

purchased and remained so up until the time of their use.

43.   The Plaintiff's fed the tainted pet food manufactured by the Defendant to their pet cat.

44.   All other members of the plaintiff class fed the tainted pet foods to their pets.

45.   As a result of the defect in the pet food, the Plaintiffs' cat along with the pets

belonging to the other members of the plaintiff class became severely ill and required

veterinarian treatment at great expense to the Plaintiffs and all other members of the

plaintiff class.

46.    The Defendant, in releasing the pet food it manufactured to various distributors and into the stream of commerce, impliedly warranted that the pet food it manufactured was fit for consumption by pets and that it was safe and suitable for that purpose.

47.    In purchasing and using the pet food manufactured by the Defendant, the Plaintiffs and all other members of the plaintiff class relied on the Defendant's skill and judgment as well as the implied warranty of fitness for the purpose for which the Plaintiffs and all other members of the plaintiff class purchased and used the pet food.

48.    The pet food manufactured by the Defendant was not fit for its intended purpose and as a result of the Defendant's breach of warranty of fitness of the pet food the Plaintiffs and all other members of the plaintiff class have sustained damages.

**49.**    The Defendant is on notice of the defect contained within its product as the Defendant issued a press release wherein it acknowledged the defect and recalled the defective products on March 16, 2007.

**WHEREFORE**, the Plaintiffs, on their own behalf and on behalf of all others similarly situated, demand judgment against the Defendant on COUNT THREE of their Complaint, for:

a.    Compensatory damages;

b.    Consequential damages;

c.    Incidental damages;

d.    Attorneys fees, costs, costs of investigation, litigation and interest;

e.    For such further relief as the Court deems equitable and just;

## COUNT THREE
### (Breach Of Contract)

50.  The Plaintiffs repeat and reallege all of the allegations and statements set forth in
     each of the preceding paragraphs as if set forth herein at length.

51.  The parties hereto were parties to an implied contract for the manufacture and
     purchase of pet food.

52.  Pursuant to that agreement the Defendant had an affirmative duty to ensure that the
     pet foods it manufactured were fit for consumption.

53.  The pet food manufactured by the Defendant was not fit for consumption.

54.  The Defendant breached the agreement it had with the Plaintiffs and all other
     members of the plaintiff class when it failed to ensure the pet foods it manufactured
     were fit for consumption.

55.  As a direct and proximate result of the breaches referenced in the preceding
     paragraphs, the Plaintiffs and all other members of the plaintiff class have been
     damaged.

**WHEREFORE**, the Plaintiffs, on their own behalf and on behalf of all others similarly
situated, demand judgment against the Defendant on COUNT THREE of their Complaint, for:

   a.   Compensatory damages;

   b.   Consequential damages;

   c.   Incidental damages;

   d.   Attorneys fees, costs, costs of investigation, litigation and interest;

   e.   For such further relief as the Court deems equitable and just;

## COUNT FOUR
### (Negligence)

56.    The Plaintiffs repeat and reallege all of the allegations and statements set forth in
each of the preceding paragraphs as if set forth herein at length.

57.    The Defendant owed a duty to the Plaintiffs as well as all other members of the
plaintiff class to ensure that the pet foods it manufactured were fit for consumption.

58.    The pet foods manufactured by the Defendant were not fit for consumption.

59.    When the Plaintiff's pet ingested the pet foods manufactured by the Defendant, the
Plaintiff's pet became severely ill.

60.    Similarly the pets owned by the other members of the plaintiff class became ill after
having ingested the tainted pet food manufactured by the Defendant.

61.    As a result the Plaintiffs and all other members of the class were forced to seek
veterinarian treatment for their pet, causing the Plaintiffs and all other members of the
plaintiff class to suffer damages.

62.    Further evidence of the Defendant's negligence can be found in their violation of the
Federal Food, Drug, and Cosmetic Act codified at 21 U.S.C. 301.

63.    The damages suffered by the Plaintiffs and all other members of the plaintiff class
were as a direct and proximate cause of the Defendant's breach of their duty to ensure
that the pet foods it manufactured were fit for consumption.

**WHEREFORE**, the Plaintiffs, on their own behalf and on behalf of all others similarly
situated, demand judgment against the Defendant on COUNT FOUR of their Complaint, for:

a.    Compensatory damages;

    b.     Consequential damages;

    c.     Incidental damages;

    d.     Attorneys fees, costs, costs of investigation, litigation and interest;

    e.     For such further relief as the Court deems equitable and just;

## REQUEST FOR DISCOVERY

Please be advised that pursuant to Federal Rule of Civ. Proc. 26, demand is hereby made for all parties to this action to provide to the Plaintiffs all discovery as to all issues.

## DEMAND FOR JURY TRIAL

Please take notice that the Plaintiffs hereby demand a trial by jury on all claims so triable in the above captioned matter.

## DESIGNATION OF TRIAL ATTORNEY

Please Take Notice, that Gregg D. Trautmann, Esq. of the law firm of Trautmann & Associates, LLC, is hereby designated as trial attorney for the Plaintiffs in the above captioned matter.

TRAUTMANN & ASSOCIATES, LLC
Attorneys for Plaintiff

Date: March 23, 2007

By:   /s/ *Gregg D. Trautmann, Esq.*
      Gregg D. Trautmann, Esq. (GT3687)

# EXHIBIT J

ABBEY SPANIER RODD ABRAMS
   & PARADIS, LLP
Arthur N. Abbey Gardy
Stephen T. Rodd
Orin Kurtz
212 East 39th Street
New York, New York 10016
(212) 889-3700

MCLAUGHLIN & STERN, LLP
Alan E. Sash
260 Madison Avenue
New York, New York 10016
Tel: 212-448-1100
Fax: 212-448-0066

Attorneys for Plaintiff

**RECEIVED**

**MAR 2 6 2007**

AT 8:30_____M
WILLIAM T. WALSH
CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDA TINKER, Individually and On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>MENU FOODS, INC.,<br><br>Defendant. | Civil Action No. 07 cv 1468 (NLH)<br>Judge:<br><br>CLASS ACTION COMPLAINT FOR CONSUMER FRAUD<br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Linda Tinker ("Plaintiff") brings this class action complaint against defendant Menu Foods, Inc., ("Defendant," "Menu Foods" or the "Company") to seek redress for herself and all others whose dogs and/or cats were injured by consumption of contaminated food manufactured and sold by Defendant.

## NATURE OF THE CASE

1.      Defendant knowingly and intentionally sold pet food that was causing acute renal failure in dogs and cats. Defendant knew of such harm as early as February 20, 2007 and did not announce a recall to the public until nearly a month later, on March 16, 2007. Thus, hundreds, if not thousands, of animals died while Defendant continued to profit from the sale of contaminated pet food. On March 23, 2007, ABC News reported that rat poison—nonetheless rat poison that is illegal in the United States—was to blame for the contamination that was killing and continues to kill animals. The chemical is called aminopterin.

2.      On March 16, 2007, Defendant announced that it was recalling nearly one hundred brands of dog and cat food that it had manufactured at its facilities in Emporia, Kansas and Pennsauken, New Jersey, as a result of consumer complaints that, after consuming those brands of food, dogs and cats had died from acute renal failure.

3.      According to the United States Food and Drug Administration (the "FDA"), Defendant waited nearly one month after it became aware that animals were dying from its product to announce the recall. Defendant received several complaints from consumers on and after February 20, 2007. Beginning on February 27, 2007, Defendant performed internal testing and fed its food to between forty and fifty animals. On March 2, 2007, the first of those animals exhibited signs of kidney failure and died and eight more died soon thereafter. Defendant also continued to receive complaints that animals were suffering from acute renal failure as a result of eating its food. However, Defendant did not announce the recall until March 16, 2007. In that time, while Defendant continued to profit, animals were sickened and killed by contaminated pet

food. Plaintiff and the class was damaged as a result of Defendant's deliberate sale of unsafe pet food.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d) because Plaintiff is a citizen of a different state than Defendant, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Defendant is a New Jersey corporation.

## THE PARTIES

6.      Plaintiff Linda Tinker is, and at all times relevant to this Action, has been a California resident. Plaintiff purchased Special Kitty Select pet food for her cat at Wal-Mart in Paso Robles, California. After consuming the Special Kitty Select pet food, Plaintiff's cat suffered from sever renal failure, as diagnosed by a veterinarian, and had to be euthanized. Plaintiff called Defendant to complain on March 16, 2007 and was told that a representative would call Plaintiff back. As of the date of filing this Complaint, Plaintiff has not received a call back from Defendant.

7.      At all times relevant to this Action, Defendant Menu Foods, Inc. was and is a New Jersey corporation, with its principle place of business located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey, 08110. Menufoods is a major manufacturer of "wet food" for dogs and cats. Defendant manufactures dog and cat food which is sold under the names of a number of national retailers such as Wal-Mart, Safeway, Kroger and other store brands. Defendant manufactures pet foods for 17 of the top 20 North American retailers and is also a contract manufacturer for the top branded food

companies, including Proctor & Gamble Co. Defendant's food is sold, among other names, under the Iams and Eukanuba brands. Defendant's three U.S. and one Canadian factory produce more than 1 billion cans of wet food per year. Defendant is majority owned by Menu Foods Income Fund, based in Ontario, Canada.

## SUBSTANTIVE ALLEGATIONS

8.  On February 20, 2007, Defendant received the first of several consumer complaints regarding its products. The complaints received involved "cuts and gravy" style dog food manufactured at Defendant's Emporia, Kansas manufacturing facility between December 3, 2006 and March 6, 2007.

9.  On February 27, 2007, Defendant began to test the safety of its pet foods by performing a "taste trial" on its own animals. Defendant performed the "taste trial" by feeding the contaminated food to between forty and fifty dogs and cats. The tests killed nine of Defendant's own animals.

10.  The first animal to die as a result of Defendant's test was a cat, which exhibited signs of kidney failure and died on March 2, 2007—two weeks before Defendant announced the recall.

11.  Subsequently, eight more of Defendant's cats died from eating Defendant's food.

12.  Thus, nearly twenty percent of the animals that ate Defendant's "cuts and gravy" food—at least nine of forty to fifty animals given the food by Defendant—died after eating that food.

13.     However, in the following weeks, Defendant continued to sell and profit from the contaminated "cuts and gravy" pet food while animals throughout the country continued to suffer acute renal failure and die from eating Defendant's food.

14.     Finally, on March 16, 2007, Defendant announced that it was recalling all of its "cuts and gravy" style dog and cat food produced at its facilities in Emporia, Kansas, and New Jersey between December 2, 2006 and March 6, 2007.

15..     The list of foods recalled was extensive. Defendant recalled nearly 100 brands of dog and cat food. The list of recalled products is attached to this Complaint as Exhibit A. Approximately 60 million cans and pouches of pet food in North America have been recalled.

16.     Panic ensued among pet owners as they looked at the list and saw that their pets had eaten the now-recalled brands of food.

17.     According to MSNBC, the Animal Medical Center in Manhattan tested 143 animals for kidney failure between March 17, 2007 and March 21, 2007. Of those, ten were confirmed to be diet-related cases, and one cat died.

18.     According to the New York Times, Lisa Moses, a staff veterinarian at Angell Animal Medical Center-Boston said the emergency room had been "flooded" with pet owners who were worried that their animals may suffer acute renal failure as a result of consuming contaminated food manufactured by Defendant. Angell Animal Medical Center said that one cat had died and two dogs had been stricken with kidney failure in the last week and that it was reviewing all renal cases it had seen in the last few months.

19.     "People are panic-stricken," Dr. Moses told the Times. "This is really scary, and I don't blame them."

20.     After the recall, the FDA sent inspectors to Defendant's manufacturing plants in Kansas and New Jersey.

21.     On March 21, 2007, Defendant stated that it could not exactly what about its food caused pets to suffer kidney failure.

22.     In an interview with the Associated Press, Paul Henderson, the Chief Executive and President of Menu Foods, said Menu Foods was looking at a single ingredient as the cause of acute kidney failure in animals that had eaten food manufactured by Menu Foods. Mr. Henderson would not identify the single ingredient, but the FDA said the investigation was focusing on wheat gluten, a protein source used to thicken the "gravy" in wet pet food.

23.     According to the New York Times, Menu Foods and the FDA have said the acute kidney failure in animals had coincided with the timing of the Company's use of a new wheat gluten supplier.

24.     Finally, on March 23, 2007, ABC news reported that investigators determined that a rodent-killing chemical—aminopterin—is the toxin the tainted pet food that killed the animals.

25.     According ABC News, the Animal Medical Center and other veterinarians learned of an additional 200 reported cases of kidney failure in animals and suspect there will be a "much larger rash of cases."

26.     Veterinarians at the Animal Medical Center, which according to ABC News is considered the Mayo Clinic of veterinary medicine, traced the kidney failure back to the 60 million cans and pouches of recalled food from Menu Foods.

27.    "I was shocked and surprised—acute kidney failure is not a common problem," veterinarian Cathy Langston told ABC News. "I've already heard about 200 cases, and so I bet there are probably going to be thousands."

## DAMAGES TO PLAINTIFF AND THE CLASS

28.    Media reports concerning the recall state that Defendant, and the distributors, have offered to reimburse customers for any unused pet food returned. However, this proposed remedy is insufficient.

29.    As a result of buying Defendant's pet food, Plaintiffs and the Class have suffered significant damages beyond the price of the food. Many members of the Class brought animals who consumed Defendant's food to veterinarians for precautionary measures. Many Class members' pets exhibited symptoms of acute renal failure and required veterinary treatment. Finally, many pets died as a result of consuming Defendant's products. Thus, the owners of these animals were required to pay veterinary costs, costs of euthanization in many cases, burial costs, and also lost the purchase price they paid for their animals.

30.    Moreover, Plaintiff and other members of the Class have attempted to contact Defendant to complain, but have either received an inadequate response, no response, or have been unable to contact Defendant due to busy phone lines.

31.    The members of the Class should be compensated accordingly.

## CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this class action pursuant to Federal Rule of Civil

Procedure 23 on behalf of themselves and all others similarly situated who purchased food manufactured by Defendant during the period December 3, 2006 March 16, 2007 (the "Class" and the "Class Period" respectively).

33.     The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff estimates that there are hundreds of thousands of purchasers of foods manufactured by Defendant in the Class.

34.     There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

a.     Whether Defendant was unjustly enriched by its sales of defective food;

b.     Whether, as a result of Defendant's misconduct, Plaintiff and members of the Class are entitled to damages, equitable relief and/or other relief, and the amount and nature of such relief;

c.     Whether the food manufactured by Defendant is defective;

d.     Whether Defendant was aware of the defect inherent in its food and for how long; and

35.     The claims of Plaintiff are typical of the claims of the Class because Plaintiff, like all members of the Class, unknowingly purchased defective foods manufactured by Menu Foods. Plaintiff has no interests antagonistic to those of the Class, and Menu Foods has no defenses unique to Plaintiff or any of them.

36.     Plaintiff will fairly and adequately protect the interests of the Class and has retained attorneys experienced in class and complex litigation.

37.     A class action is superior to other available methods for the fair and

efficient adjudication of this controversy for the following reasons:

     a.     It is economically impractical for members of the Class to prosecute

          individual actions because the damages suffered by each Class

          member may be relatively small, thus the expense and burden of

          individual litigation would make it very difficult or impossible for

          individual Class members to redress the wrongs done to each of

          them individually and the burden imposed on the judicial system

          would be enormous;

     b.     The Class is readily ascertainable and definable; and

     c.     Prosecution as a class action will eliminate the possibility of

          repetitious litigation.

     38.     Plaintiffs do not anticipate any difficulty in the management of this

litigation.

## COUNT I

**(By Plaintiff Linda Tinker on behalf of all similarly situated residents of Arkansas; California; Colorado; Connecticut; Hawaii; Indiana; Iowa; Michigan; Mississippi; Missouri; Nebraska; New Hampshire; New Jersey; New York; Oklahoma; Vermont; and West Virginia For Unjust Enrichment).**

     39.     Plaintiff realleges and reasserts each and every allegation contained in the

above paragraphs of this Complaint as if fully set forth herein. During the Class Period,

Defendant manufactured and sold contaminated or defective pet food, which caused the

dogs and cats of Plaintiffs and the Class to suffer from acute renal failure and suffer

serious injury or death.

     40.     As a result of the defect, members of the Class have experienced injury to

their pet dogs and cats and/or have purchased a product that they would not have purchased had they known of the defect and the danger associated with the product and have thereby been damaged.

41.    Defendant had knowledge of the defect in its pet food prior to the time Plaintiffs purchased their pet food from, at the latest, February 20, 2007 as a result of the numerous complaints that it received from its customers.

42.    Despite Defendant's knowledge of the defect in its pet food, Defendant refused to inform consumers of the defect -- a material fact-- and/or issue a recall of the pet food until March 16, 2007—nearly one month after Defendant learned of the defect and while dogs and cats continued to be sickened by Defendant's pet food.

43.    During the Class Period, Plaintiffs and members of the Class conferred upon Defendant, without knowledge of the defect, payment for their pet food, benefits which were non-gratuitous.

44.    Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class despite Defendant's knowledge of the defect in the pet food. Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable. Moreover, as part of the recall, consumers were offered refunds for only the product which they could return. Because much of the food was actually eaten by Class members' pets, there can be no reimbursement.

45.    Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution in a manner established by the Court.

**WHEREFORE**, Plaintiffs pray that the Court enter judgment and orders in their favor and against Defendant as follows:

A.  An order certifying the Class and directing that this case proceed as a class action;

B.  Judgment in favor of Plaintiffs and the members of the Class in an amount of actual damages or restitution to be determined at trial;

C.  An order granting reasonable attorneys' fees and costs, as well as pre- and post- judgment interest at the maximum legal rate; and

D.  Such other and further relief as this Court may deem appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

Dated: March 23, 2007            By: _____

Alan E. Sash (AS 8804)
Steven J. Hyman
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 10016
Tel: 212-448-1100
Fax: 212-448-0066

Arthur N. Abbey
Stephen T. Rodd
Orin Kurtz
ABBEY SPANIER RODD
ABRAMS & PARADIS, LLP
212 East 39th Street
New York, NY 10016
Tel: 212-889-3700
Fax: 212-684-5191

Attorneys for Plaintiff Linda Tinker

# EXHIBIT A

Case 2:07-cv-00457-RSM    Document 5-2    Filed 04/06/2007    Page 26 of 82

# MENU FOODS INCOME FUND



○ Home
○ **Recall Information**
  Press Release
  Cat Product Information
  Dog Product Information

## Recalled Dog Product Information
### Recall Information 1-866-895-2708

Menu Foods Income
8 Falconer Drive
Streetsville, ON
Canada L5N 1B1

1. Americas Choice, Preferred Pets
2. Authority
3. Award
4. Best Choice
5. Big Bet
6. Big Red
7. Bloom
8. Cadillac
9. Companion
10. Demoulas Market Basket
11. Eukanuba
12. Food Lion
13. Giant Companion
14. Great Choice
15. Hannaford
16. Hill Country Fare
17. Hy-Vee
18. Iams
19. Laura Lynn
20. Loving Meals
21. Meijers Main Choice
22. Mighty Dog Pouch
23. Mixables
24. Nutriplan
25. Nutro Max
26. Nutro Natural Choice
27. Nutro Ultra
28. Nutro
29. Ol'Roy Canada
30. Ol'Roy US
31. Paws
32. Pet Essentials
33. Pet Pride - Good n Meaty
34. Presidents Choice
35. Price Chopper
36. Priority Canada
37. Priority US

38. Publix
39. Roche Brothers
40. Save-A-Lot
41. Schnucks
42. Shop Dog
43. Springsfield Prize
44. Sprout
45. Stater Brothers
46. Stop & Shop Companion
47. Tops Companion
48. Wegmans Bruiser
49. Wels Total Pet
50. Western Family US
51. White Rose
52. Winn Dixie
53. Your Pet

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.

# MENU FOODS INCOME FUND



○ Home
○ **Recall Information**
   Press Release
   Cat Product Information
   Dog Product Information

## Recalled Cat Product Information
### Recall Information 1-866-895-2708

Menu Foods Income
8 Falconer Drive
Streetsville, ON
Canada L5N 181

1. Americas Choice, Preferred Pets
2. Authority
3. Best Choice
4. Companion
5. Compliments
6. Demoulas Market Basket
7. Eukanuba
8. Fine Feline Cat
9. Food Lion
10. Foodtown
11. Giant Companion
12. Hannaford
13. Hill Country Fare
14. Hy-Vee
15. Iams
16. Laura Lynn
17. Li'l Red
18. Loving Meals
19. Meijer's Main Choice
20. Nutriplan
21. Nutro Max Gourmet Classics
22. Nutro Natural Choice
23. Paws
24. Pet Pride
25. Presidents Choice
26. Price Chopper
27. Priority US
28. Save-A-Lot
29. Schnucks
30. Science Diet Feline Savory Cuts Cans
31. Sophistacat
32. Special Kitty Canada
33. Special Kitty US
34. Springfield Prize
35. Sprout
36. Stop & Shop Companion
37. Tops Companion

Menu Foods Income Fund - Annual General Meeting

38.  Wegmans
39.  Weis Total Pet
40.  Western Family US
41.  White Rose
42.  Winn Dixie

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.

# EXHIBIT K

**LITE DEPALMA GREENBERG & RIVAS, LLC**
Bruce D. Greenberg, Esq.
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Phone: (973) 623-3000
Fax: (973) 623-0211

**BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.**
Wendy J. Harrison, Esq.
Guy A. Hanson, Esq.
Dana L. Hooper, Esq.
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012-3311
Phone: (602) 274-1100
Fax: (602) 274-1199

Attorneys for Plaintiffs

RECEIVED

MAR 2 7 2007
8 : ㅇㅇP M
AT 8:30
WILLIAM T. WALSH, CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| Paul Richard and Jennifer Richard, husband : and wife, Charles Kohler and Alicia Kohler, : husband and wife, | : Civil Action No.: |
| Plaintiffs, | : |
| v. | : |
| Menu Foods Income Fund, a Canadian open-ended trust, Menu Foods Limited, a Canadian corporation, Menu Foods Holdings, Inc., a Delaware corporation, Menu Foods, Inc., a New Jersey corporation, Menu Foods Midwest corporation, a Delaware corporation, Menu Foods South Dakota, Inc., a Delaware corporation, ABC partnerships, XYZ corporations, | : **CLASS ACTION COMPLAINT** |
| Defendants. | : |

Plaintiffs Paul Richard and Jennifer Richard and Alicia Kohler, for their

class action complaint, allege as follows:

## NATURE OF THE ACTION

1.      This is a class action seeking recovery for damages caused by
Defendants' poisonous pet food. Defendants' food injured or killed pets in
Michigan, Indiana and throughout the United States. According to media reports,
testing revealed that Defendants' adulterated pet food may have killed as many as
one out of every six who ate it.

2.      Plaintiffs Paul Richard and Jennifer Richard owned a pet cat,
Teddy, who was killed by Defendants' contaminated food. Plaintiff Alicia
Kohler owned a cat, Coco, who was also killed by Defendants' food. These
Plaintiffs bring this action individually and on behalf of similarly situated persons
throughout the United States whose pets were harmed or killed by Defendants'
products. Pursuant Rule 23, Federal Rules of Civil Procedure, Plaintiffs assert
claims on behalf of a class consisting of all dog or cat owners in the United States
who purchased "cuts and gravy" style wet food that was manufactured and
recalled by Defendants, and whose pets became sick or died after eating
Defendants' pet food.

3.      Like others in the proposed class, Plaintiffs bought pet food
manufactured and distributed by Defendants, believing it was safe for their pets to
eat.

4.      The food was not safe. It was lethal. Within days of eating it,
Plaintiffs' pets experienced massive renal failure and died.

5.      Plaintiffs are members of a rapidly growing group of pet owners
who have been damaged by Defendants' unsafe pet food. Based on news reports,

pet cats and dogs across the United States have been sickened or killed after
eating Defendants' pet food products.

## THE PARTIES

6.    At all relevant times, Plaintiffs Paul Richard and Jennifer Richard
resided in Hillman, Michigan.  Plaintiff Alicia Kohler resided in Michigan City,
Indiana.

7.    The Defendants responsible for producing the adulterated pet food
are business entities that reside in Canada and the United States.  At all relevant
times, Defendant Menu Foods Income Fund was and is an unincorporated open-
ended trust established under the laws of Ontario, Canada.    Through an
arrangement of partnerships and corporations, Menu Foods Income Fund owns
and operates Defendant Menu Foods Limited, a corporation incorporated under
the laws of Ontario, Canada.

8.    Menu Foods Income Fund owns and operates corporations in the
United States.  Defendant Menu Foods Holdings, Inc. is a Delaware corporation,
and a wholly-owned subsidiary of Menu Foods Limited (in Canada).  Defendants
Menu Foods, Inc., Menu Foods Midwest Corporation and Menu Foods South
Dakota, Inc. are wholly-owned subsidiaries of Menu Foods Holdings, Inc.  Menu
Foods, Inc. is a New Jersey corporation with its principal place of business in
Pennsauken, New Jersey.   Menu Foods Midwest Corporation is a Delaware
corporation with its principal place of business in Emporia, Kansas.  Menu Foods
South Dakota, Inc. is a Delaware corporation with its principal place of business

in Sioux City, South Dakota. In this Complaint, the Menu Foods Defendants in Canada and the United States are referred to collectively as "Menu" or "Defendants."

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005, Pub. L. 109-2 (Feb. 18, 2005).

10.      Venue is proper in the District of New Jersey under 28 U.S.C. § 1391(b)(2) as to the American-based Defendants because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district. Defendants manufactured and distributed recalled "cuts and gravy" style pet food in this district. Venue is proper as to the Canadian-based Defendants under 28 U.S.C. § 1391(d).

## GENERAL ALLEGATIONS

### A.    Menu's Operations

11.      Menu manufactures wet pet food, packages it in cans and pouches, and sells it either to retail customers as private-label products or to brand-owners as contract manufactured pet food. Menu claims it is the leading manufacturer of wet pet food in North America.

12.      "Private label" products are pet foods that are commissioned, marketed and owned by a retailer as opposed to a manufacturer. Menu claims it supplies all or a "meaningful portion" of the private-label wet pet food products

sold by such retailers as Kroger Co., Safeway, Wal-Mart Stores, PetSmart, Inc. and Pet Valu, Inc.

13.    "Contract manufactured" products are pet foods manufactured for a pet food brand-owner, such as Iams or Purina. Menu claims it is a contract manufacturer for five of the top six branded pet food companies in North America.

14.    As private label or contract manufactured products, Menu manufactures and distributes wet cat food under such labels as America's Choice, Authority, Best Choice, Companion, Compliments, Eukanuba, Fine Feline Cat, Iams, Nutro Natural Choice, Paws, Pet Pride, President's Choice, Priority, Science Diet, Total Pet and Winn Dixie.

15.    As private label or contract manufactured products, Menu manufactures and distributes wet dog food under such labels as America's Choice, Authority, Award, Big Red, Companion, Eukanuba, Food Lion, Great Choice, Iams, Nutriplan, Ol' Roy, Pet Essentials, President's Choice, Priority, Publix, Total Pet, Western Family and Winn Dixie.

16.    Menu manufactures and distributes its wet pet food products from facilities in Pennsauken, New Jersey, Emporia, Kansas, North Sioux City, South Dakota, and Streetsville, Ontario.

17.    Menu boasts that its manufacturing facilities are able to manufacture 1000 cans of wet pet food per minute or 1100 pouches of wet pet food per minute. Collectively, Menu's plants are capable of producing more than one billion containers of wet pet food per year.

18.    Menu intended that its pet food products be distributed and offered for sale throughout the United States, including Indiana, Michigan and New Jersey. Menu promoted and advertised its pet food products throughout the United States, including Indiana, Michigan and New Jersey.

19.    Cat and dog owners love their pets. Throughout the United States, owners buy products manufactured by Menu and feed them to their pets because they believe the food is nutritious and safe to eat.

**B.    Menu's Manufacture and Distribution of Contaminated Pet Food**

20.    On March 16, 2007, Menu announced it was recalling approximately 60 million cans and pouches of contaminated "cuts and gravy" style cat and dog food.  Menu recalled wet pet food marketed under at least 90 labels in the United States between December 3, 2006 and March 6, 2007.  Menu euphemistically characterized the recall as a "precautionary" measure and said it was taking these products off the market "out of an abundance of caution."

21.    Menu later expanded the recall to all "cuts and gravy" style pet food products, regardless of the manufacture date.

22.    Menu told the Food and Drug Administration ("FDA") it began receiving complaints on February 20, 2007 that pet dogs and cats who ate its wet "cuts and gravy" pet food were becoming sick and dying.  Menu, however, has not disclosed the contents of the complaints or the dates they were received.  One Canadian media source has reported that Menu began receiving reports of concerns about its "cuts and gravy" pet food as early as December 2006.

23.     On February 27, 2007, Menu began testing its food by feeding it to cats, dogs and other unidentified animal species. Several of the test animals died, Menu has admitted that test animals who were fed the suspicious food began dying as early as March 2, 2007.

24.     Nevertheless, Menu waited until March 16, 2007 before recalling any of the adulterated food. Menu made the recall announcement on a Friday afternoon at 3:51 p.m. ET, ten minutes before close of trading on the New York Stock Exchange and Toronto Stock Exchange.

25.     The impact of the recall announcement was immediate.  Through the following weekend, Menu's switchboard was swamped with some 47,000 calls as pet owners tried to get more information.  Owners called their veterinary clinics and took their pets in for examinations.  The New York Times reported: "Around the country, worried owners of dogs and cats kept veterinarians' offices and pet stores busy fielding calls yesterday, concerned that the food might have sickened their pets."  The FDA described the effect on pet owners who learned they had fed their pets poisoned food: "the growing crisis is an emotional one."

26.     Menu could not determine why its food was sickening and killing cats and dogs.  However, testing by New York state's food laboratory discovered aminopterin in Menu's "cuts and gravy" style pet food.  Aminopterin is a compound used in other countries as rat poison.

27.     Although Menu knew its "cuts and gravy" style food was unsafe for pets, it never closed the facility or facilities that produced the contaminated products.

## ALLEGATIONS REGARDING PLAINTIFFS

### (A)   Plaintiffs Paul and Jennifer Richard

28.    On March 2, 2007, Plaintiffs Paul and Jennifer Richard bought several pouches of Special Kitty cuts and gravy style cat food from a Wal-Mart store near their home in Hillman, Michigan. The food was for their cat, Teddy.

29.    On March 3, 2007, Teddy, began showing signs of illness after eating some of the Special Kitty food. The symptoms continued over the next two days and Plaintiffs took Teddy to their veterinarian on March 5, 2007.

30.    The veterinarian told Plaintiffs that Teddy's kidneys had grown to three times their normal size and that he was experiencing renal failure. On March 6, 2007, Teddy was put to sleep.

### (B)   Plaintiff Alicia Kohler

31.    On March 5 or 6, 2007, Plaintiff Alicia Kohler bought cans of "cuts and gravy" style Meijer Main Choice cat food at a Meijer store near her home in Michigan City, Indiana. The food was for Ms. Kohler's pet cat, Coco.

32.    Within a day of eating the Meijer Main Choice, Coco became sick. She became lethargic, would not eat, and began vomiting. When the symptoms worsened, Ms. Kohler took Coco to her veterinarian on March 9, 2007. After a blood workup, the veterinarian told Ms. Kohler that Coco was experiencing renal failure. Coco was put to sleep later that day.

33.    On March 16, 2007, Ms. Kohler learned of Menu's recall on the evening news. Through the weekend, she tried to contact Menu, but repeatedly received a busy signal.

34.    Plaintiffs bought contaminated pet food and fed it to their pets before March 16, 2007. Plaintiffs' pets were dead by the time Menu began recalling its tainted food.

## CLASS ACTION ALLEGATIONS

35.    Plaintiffs seek certification of their warranty, strict liability and negligence claims under Rules 23(a) and (b)(3) and/or (b)(1)(B), Federal Rules of Civil Procedure. Plaintiffs also seek certification of a punitive damages claim under Rule 23.

36.    The class satisfies the requirements of Rule 23(a). The members of the proposed class are so numerous that joinder is impracticable. The March 16, 2007 recall numbered approximately 60 million cans or pouches. Before Menu's belated recall, its tainted pet food was consumed by pets across America. The death toll currently numbers in the hundreds, and veterinarians agree that the number of pets sickened or killed by the bad food will increase precipitously.

37.    Plaintiffs' experiences and resulting claims are typical of class members'. Both Plaintiffs and class members bought adulterated pet food manufactured and distributed by Menu. Both Plaintiffs and class members suffered the same kind of damages when their pets were sickened or killed by Menu's food.

38.    The claims involve questions of law and fact common to Plaintiffs and all members of the class. These questions include:

(a)    whether Menu marketed and distributed contaminated pet food;

(b)    whether express warranties apply to the sale of pet food to consumers, and whether Menu's sale of contaminated pet food breached express warranties;

(c)    whether the contaminated pet food sold by Menu was not reasonably fit, suitable or safe for its intended purpose;

(d)    whether the allegedly poisonous pet food was altered in any way after leaving Menu's control;

(e)    whether the contamination in the pet food was or could be known to the ordinary consumer or user;

(f)    whether Menu's poisonous pet food is egregiously unsafe or ultra-hazardous to pets;

(g)    whether the tainted pet food has any usefulness as pet food;

(h)    Whether Menu made representations and promises that its pet food was safe for pets to consume;

(i)    whether Menu's pet food conformed to representations and promises regarding the safety of its food; and

(j)    whether Menu's failure to warn about or recall pet food it knew posed a substantial risk of serious harm to pets supports an award of punitive damages.

39.    Plaintiffs have no interests antagonistic to those of the class, and have retained attorneys who are knowledgeable in class action litigation. The interests of Class Members are therefore fairly and adequately protected.

40.    This action is maintainable as a class action under Rule 23(b)(3) because questions of law or fact common to the Class predominate over any questions affecting only individual members.

41.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Although the loss of or injury to class members pets is emotionally devastating, the amount of objectively quantifiable damages suffered by pet owners is relatively small. Plaintiffs and class members therefore would find it difficult to litigate individual claims against a well-heeled corporate giant. The expense and burden of individual litigation makes it impossible for members of the class to individually redress the wrongs done to them.

## CAUSES OF ACTION

### COUNT I
### (PRODUCT LIABILITY UNDER N.J.S.A. 2A:58C-1 *et. seq.*)

42.    Plaintiffs incorporate the allegations contained above.

43.    Menu is a manufacturer or seller of a product that caused harm to Plaintiffs and class members.

44.    Menu manufactured, distributed, marketed and sold pet food products containing contaminants that were toxic to pets. Menu's contaminated pet food was not reasonably fit, suitable or safe for its intended purpose, as feeding the food to dogs and cats subjected them to imminent harm or death.

45.    Menu's adulterated pet food was egregiously unsafe and had no usefulness as pet food.

46.     The pet food products were contaminated, defective and unreasonably dangerous when they left Menu's control.

47.     Plaintiffs and class members did not and could not know the Menu Foods pet food they purchased and fed to their pets was contaminated and unsafe.

48.     The pet food products were not altered or misused by Plaintiffs, class members or any third party.

49.     The unfit and unsafe adulterated pet food products caused Plaintiffs' and class members' pets who ate it to become sick or die.

50.     Menu's unfit and unsafe pet food products have caused Plaintiffs and class members damages, including loss of their pets, past and future veterinary expenses, and other damages yet to be ascertained.

51.     Menu knew that pet owners throughout the United States were feeding its pet food products to their pets every day. By the beginning of March 2007, and likely earlier, Menu knew its pet food was contaminated and was toxic and potentially fatal to cats and dogs who ate it. Menu knew its inaction would result in cats and dogs across the United States becoming sick or dying as their kidneys failed, would cause pet owners to spend money on veterinary care, and would cause emotional devastation as pet owners helplessly watched their pets sickened or killed. Under the circumstances, Menu's conduct was egregious and outrageous, and warrants an award of punitive damages for Plaintiffs and the class.

## COUNT II
## (BREACH OF EXPRESS WARRANTY)

52.    Plaintiffs incorporate the allegations contained above.

53.    The contaminated pet food products manufactured and marketed by Menu that harmed Plaintiffs' and class members' pets are "goods." Menu is a "seller" of goods and a "merchant." Plaintiffs and class members are "consumers" and "buyers."

54.    Menu made representations and promises that its pet food was safe for pets to consume. These representations are express warranties or obligations because Plaintiffs' and class members' purchase of Menu's pet food products were based in part on them.

55.    The poisoned pet food did not conform to Menu's representations and promises. Menu has therefore breached express warranties and obligations to Plaintiffs and class members.

56.    Plaintiffs and class members have suffered damages resulting from the breach of express warranties.

## COUNT III
## (NEW JERSEY CONSUMER FRAUD)

57.    Plaintiffs incorporate the allegations contained above.

58.    The pet food manufactured by Menu constitutes merchandise under N.J. Stat. Ann. §§ 56:8-1 *et seq.*

59.    Menu made representations and promises that its pet food was safe for pets to consume.

60.     Menu's pet food did not conform with representations and promises regarding the safety of its food. Menu failed to immediately recall or remove unsafe food products it knew or had reason to know were unsafe.

61.     Menu's actions constitute deception, use of deceptive acts or practice, fraud, misrepresentation and concealing, suppressing and omitting material facts in connection with the sale and advertisement of merchandise.

62.     Menu intended Plaintiffs to rely of its deception, deceptive acts and practices, fraud, misrepresentations and concealment, suppression and/or omission of material facts when selling Plaintiffs the pet food.

63.     As a result of Menu's deception, deceptive acts and practices, fraud, misrepresentations and concealment, suppression and/or omission of material facts when selling Plaintiffs the pet food, Plaintiffs suffered ascertainable damages.

64.     Plaintiffs are entitled to treble damages under N.J. Stat. Ann. §§ 56:8-1 *et seq.*

65.     Plaintiffs are entitled to punitive damages under N.J. Stat. Ann. §§ 56:8-1 *et seq.* as Menu's actions were reckless, wanton, egregious and outrageous.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the class, request the following relief:

(a)     An order certifying the class as defined above;

(b)     An award of damages including, but not limited to, the cost of contaminated food, veterinarian bills and expenses associated with the examination, testing, diagnosis, treatment and euthanization of

animals poisoned by Menu's tainted food, pet disposal costs, and the value of the diseased pet;

(c)     Treble damages;

(d)     Punitive damages awarded on a class-wide basis;

(e)     Pre-judgment and post-judgment interest;

(f)     Plaintiffs' attorneys' fees and costs incurred in prosecuting this action; and

(g)     Such other relief as the Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims and issues.

Dated: March 27, 2007

By: _____

Allyn Z. Lite
Bruce D. Greenberg, Esq.
**LITE DEPALMA GREENBERG & RIVAS, LLC**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tel: (973) 623-3000
Facsimile: (973) 623-0211

**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
Wendy J. Harrison, Esq.
Guy A. Hanson, Esq.
Dana L. Hooper, Esq.
2901 N. Central Avenue, Suite 1000
Phoenix, Arizona 85012

Attorneys for Plaintiffs

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

Plaintiffs, by their attorneys, hereby certify that the matter in controversy is not the subject of any pending action.

I hereby certify that the following statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

Dated: March 27, 2007

By: _____
        Allyn Z. Lite

# EXHIBIT L

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANICE BONIER;<br>GUY BRITTON; and<br>TAMMY MATTHEWS, individually and on<br>behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>MENU FOODS, INC, MENU FOODS<br>INCOME FUNDS, and MENU FOODS<br>MIDWEST CORPORATION,<br><br>          Defendant. | Court File No. _____<br><br>**INDIVIDUAL AND CLASS ACTION<br>COMPLAINT, INCLUDING<br>COMPENSATION FOR VETERINARY<br>MONITORING FOR CLASS MEMBERS'<br>PETS, COMPENSATION FOR<br>EMOTIONAL DISTRESS,<br>REIMBURSEMENT OF VETERINARY<br>EXPENSES INCURRED BY CLASS<br>MEMBERS, AND OTHER DAMAGES<br>AND EQUITABLE RELIEF**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1.      As the pet food industry knows all too well — Americans love their pets. Indeed, this multi-million dollar industry has grown by leaps and bounds over the past decade as more and more Americans own more and more pets. Over the past few months, however, this essentially unregulated industry has shown what can happen when a company recklessly ignores possible early warning signs regarding one of its most popular lines of pet food. Instead of focusing on doing the right thing, the Defendants in this case have engaged in a classic case of "public relations first, clients last" mentality with respect to its tainted, deadly pet food. As outlined in this complaint, as early as December 2006, the Defendants were getting reports of

1

animals getting very ill after eating Menu Foods' products. Yet, the Defendants waited almost three months before announcing a recall.

2.      The Plaintiffs in this case are united by love of their pets and by their desire to see that justice is done for all pet lovers in the United States. The Plaintiffs in this case — a representative sample of thousands of others in a similar situation — ask that the Defendants be held fully accountable and that measures are taken to ensure that the unnecessary deaths of the hundreds (and possibly thousands) of loved pets never happens again. In filing this complaint, these Plaintiffs ask this Court to, *inter alia*, (i) establish a veterinary medical monitoring program funded by the Defendants, (ii) require Defendants to reimburse all the out-of-pocket expenses incurred by class members, (iii) require the Defendants to immediately provide detailed information to the public about the tainted pet food, and (iv) appropriately compensate all Class members for their pain and suffering incurred as a result of the deaths of their beloved pets. In addition, the Plaintiffs demand that the Defendants immediately take steps to ensure that the distribution of Tainted Pet Food will never happen again and to establish, dedicate and fund an internet-based memorial to honor the hundreds and hundreds of pets who have died needlessly due to the ingestion of the Defendants' tainted food.

3.      Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on their own behalf and as representatives of a Class. Plaintiffs and members of the Class have also incurred significant costs for veterinary and/or other economic losses and will continue to incur such expenses and losses in the future. In addition, Class members have had to pay for food that is no longer useable, and Defendants must reimburse them for the cost of these purchases.

2

## PARTIES

4.      Individual and Representative Plaintiff Janice Bonier is a member of the class and lost her much loved cat. Janice Bonier's cat was named Kurt. At 25 lbs, he was a "solid kitty." Although he had no previous medical issues, he died within days of being fed "Special Kitty" cat food. In fact, on March 4, 2007 he was fine. On March 5th, Ms Bonier's daughter found him dead.

5.      Individual and Representative Plaintiff Guy Britton is a member of the class and lost his much loved dog. "Allie" was the name of Guy Britton's Golden Retriever. After being fed tainted pet food in January 2007, he began vomiting and showing signs of lethargy. Mr. Britton took Allie to the vet, and the vet recommended that Allie be put down immediately.

6.      Individual and Representative Plaintiff Tammy Matthews is a member of the class and lost her much loved cat. Although Tammy Matthews' cat was diagnosed with a clean bill of health in a February, 2007 vet visit, he was dead within a month from eating the tainted pet food. Ms. Matthews is angry, confused and frustrated.

7.      Defendant Menu Foods, Inc. is the main manufacturing plant of the Tainted Pet Food. The plant is located in New Jersey. Defendant Menu Foods Income Funds is the owner and operator of Menu Foods, Inc. Defendant Menu Foods Midwest Corporation is another manufacturing plant owned by Defendant Menu Food Income Funds (collectively, these defendants are referred to as the "Defendants").

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a nationwide class action lawsuit in which over $5,000,000 is at issue, there are

3

more than one hundred putative class members, and members of the class of plaintiffs are citizens of states difference from defendants.

9.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391 in that substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and Defendant is subject to personal jurisdiction in this District. Defendants' manufacturing plant is located in Pennsauken, New Jersey.

## FACTS

10.    In late December 2006, Defendants were provided reports of problems — including serious injuries to cats and dogs — with their "cuts and gravy" style pet food (hereinafter "Tainted Pet Food"). As more and more reports came to light, the Defendants decided to "internally" conduct confidential testing. During this testing period, the Company notified the FDA, but apparently decided to keep this information from the public (and distributors).

11.    In the meantime, during this "silent" period more and more reports of injuries and deaths linked to the Tainted Pet Food were reported to the Defendants. The Defendants did nothing to warn distributors or the public of the problems. Instead, the Defendants allowed the Tainted Pet Food to sit on store shelves.

12.    On March 2, 2007, the first of nine animals in the Defendants' own "secret" feeding trial died of acute renal failure. Four days later, the Defendants switched their supplier of wheat gluten due to the deaths.

13.    On March 16, 2007, after a delay of months, the Defendants finally announced a "voluntary" recall of over 60 million cans and pouches of pet foods produced by the Defendants.

4

14.    Yet, even though public reports indicated dozens and dozens of animal deaths linked to their products, the Defendants minimized the problem and would only "confirm" the deaths of "fifteen" cats and "one" dog. The Defendants "PR" spin focused on purported lack of "direct" evidence of the problem, allowing them to continue to delay the announcement of a recall.

15.    On March 23, 2007, reports indicated that the Tainted Pet Food contained rat poison ("aminopterin").

16.    The recalled products include:

Recalled cat foods:

America's Choice, Preferred Pets; Authority; Best Choice; Companion; Compliments; Demoulas Market Basket; Eukanuba; Fine Feline Cat; Food Lion; Foodtown; Giant Companion; Hannaford; Hill Country Fare; Hy-Vee; Iams; Laura Lynn; Li'l Red; Loving Meals; Meijer's Main Choice; Nutriplan; Nutro Max Gourmet Classics; Nutro Natural Choice; Paws; Pet Pride; Presidents Choice; Price Chopper; Priority US; Save-A-Lot Special Blend; Schnucks; Science Diet Feline Savory Cuts Cans; Sophistacat; Special Kitty Canada; Special Kitty US; Springfield Prize; Sprout; Stop & Shop Companion; Tops Companion; Wegmans; Weis Total Pet; Western Family US; White Rose; and Winn Dixie.

Recalled dog foods:

America's Choice, Preferred Pets; Authority; Award; Best Choice; Big Bet; Big Red; Bloom; Cadillac; Companion; Demoulas Market Basket; Eukanuba; Food Lion; Giant Companion; Great Choice; Hannaford; Hill Country Fare; Hy-Vee; Iams; Laura Lynn; Loving Meals; Meijer's Main Choice; Mighty Dog Pouch; Mixables; Nutriplan; Nutro Max; Nutro Natural Choice; Nutro Ultra; Nutro; Ol'Roy Canada; Ol'Roy US; Paws; Pet Essentials; Pet Pride - Good n Meaty; Presidents Choice; Price Chopper; Priority Canada; Priority US; Publix; Roche Brothers; Save-A-Lot Choice Morsels; Schnucks; Springfield Prize; Sprout; Stater Brothers; Stop & Shop Companion; Tops Companion; Wegmans Bruiser; Weis Total Pet; Western Family US; White Rose; Winn Dixie; and Your Pet.

17.    Due to the delay in announcing the recall, hundreds and hundreds of beloved pets needlessly died or have become very ill. Although the Defendants claim to be "sorry" — for

5

Plaintiffs and Class members, this purported apology is too little too late. Had the Defendants fully and timely reported the problem to the public, these pets would be alive and well today.

18.     Today, despite the Defendants downplay of the problem, more than two thousand self-reported deaths and injuries have been reported on the internet. With a potential 17% of the 60 million tainted products containing poison, the real numbers are in the thousands and thousands.

19.     This lawsuit seeks compensatory damages and equitable relief.

## CLASS ACTION ALLEGATIONS

20.     Plaintiffs bring this action on their own behalf and as representatives of a class consisting of all persons who purchased the pet food under the Defendant's label.

21.     Plaintiffs seek certification of the claims asserted herein pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3) for equitable, injunctive, and declaratory relief to create a Court-supervised program funded by the Defendant to provide class members with medical screening, medical research and education, and a medical/legal registry to assure that Class members pets receive prompt and proper veterinary treatment to mitigate the risk of a life threatening injuries to their pets.

22.     The named Plaintiffs herein are members of the Class they seek to represent.

23.     The Class is so numerous that joinder of all members is impracticable.

24.     The Class is comprised of "all persons in the United States who purchased the Tainted Pet Food after December 1, 2006."

25.     There are questions of law and fact common to the Class including, but not limited to:

    a.      Whether Defendants negligently and/or fraudulently distributed, promoted, tested, sold, and/or marketed tainted pet food;

6

b.    Whether Defendants conducted adequate study, testing, and analysis to determine whether and to what extent its pet food was unsafe;

c.    Whether Defendants engaged in unconscionable, deceptive, and/or unreasonable business practices and conduct;

d.    Whether Defendants knowingly, intentionally, or negligently concealed, suppressed, or omitted material information concerning the safety of their pet food from the public;

e.    Whether the Class has suffered injury by virtue of the Defendants' negligence, recklessness, carelessness, and/or unconscionable and/or deceptive business practices and conduct;

f.    Whether the Defendants falsely and fraudulently misrepresented in their advertisements, promotional materials, and other materials, the safety of its pet food; and

g.    Whether Defendants are strictly liable to the Class.

26.    These and other questions of law and/or fact are common to the Class and predominate over any questions affecting only individual Class members.

27.    The claims of the named Plaintiffs are typical of the claims of the respective Class they seek to represent, in that the name Plaintiffs and all members of the proposed Class own pets which ingested the tainted pet food.

28.    In the case of the proposed Court-supervised Veterinary Medical Monitoring Program, the representative Plaintiff and the Class as a whole will benefit from such relief.

29.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class they seek to represent.

30.    Plaintiffs have retained counsel competent and experienced in complex class actions to represent them and the members of the proposed Class. Accordingly, the interests of the Class will adequately be protected and advanced. In addition, there is no conflict of interest among Plaintiffs and the members of the proposed Class.

7

31.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted on grounds generally applicable to the Class, making appropriate injunctive and/or declaratory relief in the form of a Veterinary Medical Monitoring Program.

32.    Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because, as set forth above, common issues of law and fact predominate over any individual issues and certification of the claims as class claims is superior to other available methods for the fair and efficient adjudication of these claims.  In addition, there would be enormous economies to the courts and parties in litigating these common issues on a class-wide basis rather in individual trials.  Plaintiffs foresee no difficulties in the management of this action as a class action.

## CLASS CLAIMS

## FIRST CAUSE OF ACTION

### Veterinary Medical Monitoring Program

33.    Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

34.    As a direct result of Defendants' actions and omissions, Plaintiffs and Class members' Pets have ingested tainted and poisoned food. This potential risk of death of the pets requires diagnostic veterinary medical examinations.  By monitoring and testing, it can be determined whether the pets have ingested the tainted food.  Through such frequent testing lives of the animals can be saved.

35.    Veterinary monitoring is the most appropriate method to save Pets' lives.

36.    Accordingly, Defendants should be required to establish a veterinary medical monitoring program that includes, *inter alia*:

8

    a.      establishing a trust fund, in an amount to be determined, to pay for the veterinary monitoring, as frequently as determined to be necessary, as well as to pay development and/or research;

    b.      notifying all members of the Class that their Pets require frequent monitoring; and

    c.      providing information to treating veterinarians to aid them in detecting poisoning.

37.    Plaintiffs and the members of the Class have no adequate remedy at law in that monetary damages alone cannot compensate them for the risk to their Pets. Without a Court-monitoring program, as described above, Plaintiffs and the members of the Class will continue to face injury to their Pets.

## SECOND CAUSE OF ACTION

### [Fraudulent Concealment]

38.    Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

39.    Plaintiffs and Class members did not know and could not reasonably have known of the Tainted Pet Food.

40.    Defendants actively concealed the defect and their wrongful conduct in order to prevent, and succeeded in preventing, adverse publicity and Plaintiffs and the Class members from discovering the poisoning.

41.    Defendants continued to sell the tainted food.

42.    As a result of Defendants' fraudulent concealment, Plaintiffs and Class members, in the exercise of due diligence, could not have reasonably discovered the Tainted Pet Food.

43.    Plaintiffs and the Class have suffered injury and losses, including emotional distress.

9

## THIRD CAUSE OF ACTION

### [Fraud]

44.     Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

45.     Defendants, while in possession of unique and pertinent information involving the pet food, presented their food as safe. Defendants suppressed this information and continued sales and marketing of their products to the general public. Defendants knew or should have known Plaintiffs and fellow Class members had no means, other than Defendants' full, accurate, and objective disclosure, of obtaining the relevant information.

46.     Defendants' misrepresentations and omissions were made intentionally to induce Plaintiffs and fellow Class members to purchase the pet food.

47.     Defendants' conduct took unconscionable advantage of their dominant position of knowledge, engaging in fraud in their relationship with the Plaintiffs and fellow Class members.

48.     As a result, Plaintiffs and Class members have sustained and will continue to sustain injuries, including economic losses, and other damages, and are therefore entitled to compensatory damages and equitable and declaratory relief according to proof.

## FOURTH CAUSE OF ACTION

### [New Jersey Consumer Fraud]

49.     Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

10

50.    Defendants are the researcher, developer, designer, tester, manufacturer, inspector, labeler, distributor, marketer, promoter, and seller and/or otherwise released Tainted Pet Food into the stream of commerce.

51.    Defendants knew or should have known that the use of Tainted Pet Food causes serious and life threatening injuries to animals, but failed to warn the public, including Plaintiffs, of same.

52.    In violation of the New Jersey Consumer Fraud Act, Defendants made untrue, deceptive or misleading representations of material facts to, and omitted and/or concealed material facts from Plaintiffs and the Class.

53.    Defendants' statements and omissions were undertaken with the intent that consumers, including Plaintiffs, would rely on Defendants statements and/or omissions.

54.    The aforesaid promotion and release of Tainted Pet Food into the stream of commerce constitutes an unconscionable commercial practice, deception, false pretense, misrepresentation, and/or knowing concealment, suppression, or omission of material facts with the intent that others would rely upon such concealment, suppression or omission in connection with the sale or advertisement of such merchandise or services by Defendants, in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*

55.    Defendants concealed, omitted, or minimized the side effects of Tainted Pet Food, provided misinformation about risks and potential harms from Tainted Pet Food, and succeeded in persuading consumers to purchase for approved use Tainted Pet Food.

56.    Defendants' practice of promoting and marketing Tainted Pet Food created and reinforced a false impression as to the safety of the Tainted Pet Food, thereby placing pets at risk of serious injuries and potentially lethal side effects.

11

57.    Defendants intended that others would rely upon its concealment, suppression or omission of the risks of animals ingesting the Tainted Pet Food.

58.    Defendants' actions in connection with manufacturing, distributing, and marketing Tainted Pet Food as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the New Jersey Consumer Fraud Act, N.J.S.A., 56:8–1 et seq.

59.    Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when committing these acts of consumer fraud.

60.    As a direct and proximate result of the acts of consumer fraud set forth above, Plaintiffs purchased unsafe products and incurred monetary expense, risk and injury to their pets previously set forth herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### FIFTH CAUSE OF ACTION

#### [Strict Liability - Failure To Warn]

61.    Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

62.    Defendants developed, manufactured, marketed, and distributed the pet food.

63.    Defendants did not give an adequate, meaningful warning regarding the risk of injury from their pet food.

64.    As a direct and proximate result of Defendants' failure to warn of this serious risk, the Plaintiffs have suffered damages.

12

## SIXTH CAUSE OF ACTION

### [Negligence]

65.     Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

66.     Defendants are the designer, manufacturer, seller, and supplier of the pet food.

67.     Defendants had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of their pet food.

68.     Defendants were negligent in the design, manufacture, testing, advertising, marketing, promotion, labeling, failure to warn, and sale of their pet food.

69.     Defendants' actions as described herein constitute knowing omissions, suppression or concealment of material facts, made with the intent that others would rely upon such concealment, suppression or omissions in connection with the marketing of the pet food.

70.     The behavior of the Defendants demonstrates that Defendants acted unlawfully and negligently, used or employed unconscionable commercial and business practices, engaged in deception, fraud, false pretenses, false promises or misrepresentations, and/or perpetrated the knowing concealment, suppression or omission of material facts with the intent that consumers, including Plaintiffs, would rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of their pet food.

71.     Defendants' negligence was a proximate cause of the increased risk of harm suffered by Plaintiffs' pets as previously set forth herein.

13

## SEVENTH CAUSE OF ACTION

### [Breach Of Implied Warranties]

72.    Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

73.    Defendants are in the business of designing, manufacturing and/or supplying and/or placing into the stream of commerce affected pet food.

74.    By placing affected pet food into the stream of commerce, said Defendants impliedly warranted that the affected product was merchantable and fit and safe for it's intended use.

75.    Defendants breached the implied warranty for the Tainted Pet Food, because said products were defective, unmerchantable, and not fit for their intended purpose.

76.    Plaintiffs' pets were a foreseeable user of the Tainted Pet Food.

77.    As a direct and proximate result of Defendants' breach of implied warranties, Plaintiffs' pets suffered and will continue to risk possible death and suffer injury, disability, expense and economic loss as previously described, rendering Defendants liable for said damages.

### [Non-Class Claims]

## EIGHTH CAUSE OF ACTION

### [Emotional Distress]

78.    Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

79.    This Class is assumed individually and not as a class claim by each Plaintiff.

80.     Individual Plaintiffs have suffered and will continue to suffer emotional distress as a result of the Defendants' actions.

81.     Individual Plaintiffs seek recovery and damages due to the emotional distress caused by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter a judgment against the Defendants and in favor of the Plaintiffs and the Class and award the following relief:

A.     That this action be certified as a class action on behalf of the proposed Class described herein and that counsel of record be appointed to represent the Class;

B.     That a comprehensive Court-supervised Veterinary Monitoring Program be established;

C.     For general damages in an amount to be proven at the time of trial;

D.     For special damages in an amount to be proven at the time of trial;

E.     For pre-judgment and post-judgment interest on the above general and special damages;

F.     For restitution and disgorgement of all profits;

G.     For compensatory and other damages, as the Court may determine;

H.     For exemplary and punitive damages, to the extent permissible by law and in an amount to be proven at the time of trial, and sufficient to punish Defendants or to deter them and other from repeating the injurious conduct alleged herein or similar conduct;

I.     Costs, including experts' fees and attorneys' fees and expenses, and the costs of prosecuting this action; and

J.     Such other further relief as the Court deems just and proper.

15

### DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury

trial as to all claims triable in this action.

Dated: March __, 2007

AUDET & PARTNERS, LLP
William M. Audet
Michael McShane
Kevin L. Thomason
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone: 415.568.2555
Facsimile: 415.568.2556

*[Proposed] Lead Counsel for the Class*

THE FERRARA LAW FIRM, LLC

By: _____
        Michael A. Ferrara, Jr.

THE FERRARA LAW FIRM, LLC
601 Longwood Avenue
Cherry Hill, NJ 08002
Telephone: 856.779.9500

*Attorneys for Plaintiffs*
*and the Proposed Class*

16

# EXHIBIT M

**LITE DePALMA GREENBERG & RIVAS, LLC**
Joseph J. DePalma
Susan D. Pontoriero
Two Gateway Center, 12th Floor
Newark, NJ 07102
Telephone: 973-623-3000
Fax: 973-623-0858

**MILBERG WEISS & BERSHAD LLP**
JEFF S. WESTERMAN
SABRINA S. KIM
One California Plaza
300 South Grand Ave., Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975
Email: jwesterman@milbergweiss.com
skim@milbergweiss.com

*Attorneys for Plaintiffs*

**RECEIVED**

MAR 2 9 2007

AT 8:30 ___ 6:43 ___ M.
WILLIAM T. WALSH, CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

Alexander Nunez, on behalf of himself
and all others similarly situated,

        Plaintiff

    v.

MENU FOODS LIMITED; MENU
FOODS INC.; MENU FOODS
MIDWEST CORPORATION; MENU
FOODS INCOME FUND; MENU
FOODS SOUTH DAKOTA, INC.; and
MENU FOODS HOLDINGS, INC.,

        Defendants.

Civil Action No.: 07CV 1490(NLH)

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

131401 v1
DOCS\398873v1

- 1 -

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Alexander Nunez ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendants Menu Foods, Inc., a New Jersey Corporation, Menu Foods Income Fund, a foreign trust, and its affiliated entities (collectively "Defendants"). Plaintiff alleges the following based on personal knowledge with respect to his own experiences, and otherwise based on information and belief.

## INTRODUCTION

1.    Plaintiff brings this nationwide class action pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and as a representative of a class of persons consisting of all persons in the United States who purchased contaminated pet food products produced, manufactured, and/or distributed by Defendants that caused injury, sickness, and/or death to Plaintiff's household pet and those of other pet owners across the nation. The pet food products were or will be recalled by Defendants, and include products produced between December 3, 2006 and March 6, 2007. The defective pet food products referenced in this paragraph are referred to as the "Products" in this Complaint.

2.    Defendants are the nation's leading manufacturer of wet pet food products sold by retailers, pet specialty stores, and other wholesale and retail outlets including Wal-Mart, Safeway, Petco, PetSmart Inc., and Kroger, producing more than one billion containers per year. Defendants hold themselves out to the public as a manufacturer of safe, nutritious, and high-quality dog and cat food.

3.    Defendants developed, manufactured, marketed, advertised, and warranted their Products as free of defects, and safe and fit for the ordinary purpose for which they were used, *i.e.*, for household pet consumption. Defendants intended to, and did, place the Products into the stream of commerce to

131401 v1
DOCS\39887v1

- 2 -

be sold to Plaintiff and other pet owners in this district and throughout the United States.

4.     Since at least February 20, 2007, Defendants knew or should have known that their Products were causing illness and/or death to dogs and cats who consumed their Products. Defendants, nonetheless, delayed announcing the recall to minimize the financial fallout from the contamination. Defendants finally issued a recall nearly a month later, on March 16, 2007, but only because Defendants' biggest institutional customer had initiated its own recall of Defendants' Products at that time.     The contaminating agent has since been identified as aminopterin -- a rodentcide banned in the United States.

5.     As a result of Defendants' negligent manufacture of the Products and delay in warning affected pet owners, Plaintiff and members of the Class have unnecessarily suffered damages in the form of veterinary and burial expenses, loss of pets, and the purchase price of the Products, which Plaintiff and Class members would never have purchased had they known of the Products' defects.

6.     Defendants know and have since admitted that certain of their products manufactured in their Kansas and New Jersey facilities between December 3, 2006 and March 6, 2007 are defective and have caused, and continue to cause, severe injury and illness, and sometimes death, in household pets.

## PARTIES

7.     Plaintiff is a resident of Jackson Heights, New York.     Plaintiff purchased the recalled "Nutro Ultra" Product and fed it to his dog, who died as a result. Plaintiff, individually and as a representative of a Class of similarly situated persons (defined below), brings suit against the named Defendants for offering for sale and selling to Plaintiff and members of Class the Products in a defective condition and thereby causing damages to Plaintiff and members of the Class.

131401 v1
DOCS\398873v1

- 3 -

8.    Defendant MENU FOODS INCOME FUND (the "Income Fund") is an unincorporated open-ended trust established under the laws of the Province of Ontario with its principal place of business in Ontario, Canada. The Income Fund controls, directly or indirectly, the other Defendants engaged in the manufacture and distribution of pet food products, including the Products.

9.    Defendant MENU FOODS MIDWEST CORP. is a Delaware corporation affiliated with the other Defendants and involved in their activities relating to the Products.

10.    Defendant MENU FOODS SOUTH DAKOTA INC. is a Delaware corporation affiliated with the other Defendants and involved in their activities relating to the Products.

11.    Defendant MENU FOODS HOLDINGS, INC. is a Delaware corporation affiliated with the other Defendants and involved in their activities relating to the Products.

12.    Defendant MENU FOODS, INC. is a New Jersey corporation affiliated with the other Defendants and involved in their activities relating to the Products.

13.    Defendant MENU FOODS LIMITED ("MFL") manufactures and sells wet pet food products to retail customers and brand owners in North America. MFL owns the Kansas and New Jersey manufacturing plants that produced the Products now subject to recall. It is affiliated with the other Defendants and involved in their activities relating to the Products.

14.    Plaintiff is not aware of he true names and capacities of defendants sued as DOES 1-100, inclusive, and therefore sues them by such fictitious names. Plaintiff will amend this Complaint to add the true names and capacities of the DOE defendants once they are discovered. Each of the DOE defendants is legally responsible in some manner for the unlawful acts alleged in this Complaint.

131401 v1
DOCS\398873v1

- 4 -

15.  Some or all DOE defendants are controlled by, control, or have a common nucleus of control with one or more specifically named defendants in such manner as to justify disregarding the separateness of those entities or individuals from one another.  Some or all DOE defendants are entities or individuals, who function as the agents or co-conspirators of specifically named defendants, and other defendants (including DOE defendants), facilitating the ability of one another to perpetrate the wrongs alleged in this Complaint.

16.    All defendants, including DOE defendants, are agents for each other, or otherwise directly or vicariously responsible for their actions, either by agreement or by operation of law, including, *inter alia*, the laws applicable to general partnerships, piercing of the corporate veil, actual or apparent agency, and conspiracy.

## JURISDICTION AND VENUE

17.    The Court has original jurisdiction over this complaint pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act of 2005, Publ. L. 109-2 (Feb. 18, 2005); and over supplemental state law claims pursuant to 28 U.S.C. § 1367.

18.    Venue is proper in this district since Defendants transacted business in this district, and the conduct complained of occurred in this district, as well as elsewhere in New Jersey.  Venue is further proper in this district under, *inter alia*, 28 U.S.C. §§1391 and/or Pub. L. 109-2.

## FACTS

19.    On March 14, 2007, Plaintiff Alexander Nunez purchased the Nutro Ultra Products from a national chain pet store, PETCO, located in Howard Beach, New York.  Mr. Nunez's dog, BamBam, had just received a clean bill of health from his veterinarian that day.

20.    Plaintiff fed the Product to his pet dog, never suspecting that the Products contained a toxic chemical. In fact, Nutro Ultra boasts that it "uses only the finest wholesome, natural ingredients for sustained health and wellness." Within a few days of consuming the Product, however, Mr. Nunez's pet dog began showing symptoms of renal failure. On March 25, 2007, BamBam died as a result of consuming Defendants' Product.

21.    Defendants were long aware of problems with their Products, but delayed informing the public. By at least February 20, 2007, Defendants had received complaints from concerned pet owners reporting dogs and cats dying and becoming sick as a result of consuming Defendants' Products.    Defendants identified, as early as March 6, 2007, the likely source of the contamination -- wheat gluten from a new supplier.

22.    On March 16, 2007, nearly a month after receiving consumer complaints, Defendants initiated a recall of 60 million cans and pouches of "cuts and gravy" style dog and cat food manufactured at Defendants' Kansas and New Jersey facilities between December 3, 2006 and March 6, 2007.

23.    Rather than timely warning the public about the suspected, and later confirmed, dangers of the Products, Defendants delayed announcing the recall to minimize the financial fallout from the contamination. Defendants had no choice but to issue a recall on March 16, 2007, because Defendants' biggest customer (which accounts for 11% of Defendants' annual revenues) had initiated its own recall of Defendants' Products.

24.    On March 23, 2007, New York state health officials reported laboratory tests of the Products found high levels of aminopterin -- a rodentcide banned in the United States but commonly used to kill rats in other countries. Aminopterin is a deadly poison that is foreign to pet food, does not naturally occur

within it, and would not be expected by any reasonable person to be present in pet food.

25.    To date, Defendants have reported 14 confirmed deaths. However, the unconfirmed death rate is much higher, and veterinary professionals project thousands of pet dogs and cats will die or fall ill as a result of consuming Defendants' Products.

26.    As of March 24, 2007, Defendants stated they did not know how aminopterin got into their Products. Defendants nevertheless continue to produce pet food at the two contaminated plants -- despite the New York state health officials' findings of rat poison, despite Defendants' own product testing last month that resulted in as many as one in six animal deaths, and despite the many dogs and cats who have fallen sick or died.

27.    Defendants knew about serious problems from consumer complaints no later than February 20, 2007, and they began an internal investigation by February 27, 2007. By March 6, 2007, Defendants were able to determine a particular new supplier of wheat gluten as the likely source of the poison, and tried to correct the problem before announcing a recall in order to limit the temporal scope of the recall. Even after March 6, Defendants continued to maintain their silence, as they -- according to their own later announcement -- conducted a "substantial battery of technical tests, conducted by both internal and external specialists."

28.    Defendants did not announce a recall or inform the public about the tainted Products until March 16, 2007. By then, Defendants' largest institutional customer, which accounted for approximately 11% of Defendants' annual revenues, had initiated its *own* recall of Defendants' products, and placed all future orders of "cuts and gravy" products on "hold."

131401 v1
DOCS\398873v1

- 7 -

29.     Defendants' delay in disclosing vital information concerning the Products is in direct contrast to their own published Code of Ethical Conduct ("Code"), which touts that they are "committed to full and honest communications with [their] customers about [their] products and services." Defendants further acknowledge in their Code that, as a pet food company, their customers have "trust in us" and that "their trust in us must be justified" (e.g., by avoiding "promises that Menu [Foods] cannot keep").

30.     Defendants, directly or through actual or ostensible agents and/or co-conspirators, have implicitly and explicitly represented that the Products are fit for consumption by pets and will not result in the death and serious illness of pets who consume the Products.

31.     Defendants have also made representations, including on product labeling and in marketing and promotional materials, concerning the quality of their Products, including explicit and implicit representations that the Products are suitable for consumption by pets. Defendants ultimately make billions of dollars a year from companies who sell Menu Foods at the retail level. Accordingly, they keep themselves apprised of the advertising, promotions, marketing and claims that are made on behalf of Menu Foods' products. Defendants no doubt coordinate with the companies who brand their products at the retail level about the products' safety and quality, including the Products.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action on his own behalf and as a Class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following proposed Class:

All persons in the United States who purchased, or incurred damages by using, pet food produced or manufactured by Defendants that was

or will be recalled by Defendants, including that produced from December 3, 2006 up to and including March 6, 2007.

Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the class definition. Excluded from the Class are Defendants, their parents, subsidiaries and affiliates, directors and officers, and members of their immediate families. Also excluded from the Class are the court, the Court's spouse, all person within the third degree of relationship to the Court and its spouse, and the spouses of all such persons.

33.     The Class is composed of thousands of persons throughout the country, and is sufficiently numerous for class treatment. The joinder of all Class members individually in one action would be impracticable, and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

34.     Plaintiff's claims are typical of the claims of the Class, and Plaintiff has no interests adverse to the interests of other members of the Class.

35.     There are questions of law and fact common to all Class members that predominate over questions affecting any individual members, including the following:

(a)     Whether Defendants violated the New Jersey Consumer Fraud Act;

(b)     Whether Defendants' representations, omissions, and conduct regarding the Products were misleading or false;

(c)     Whether Defendants' representations and conduct were likely to deceive consumers into believing that the Products were safe for the purpose for which they were sold;

(d)     When Defendants knew or should have known the Products were poisoning animals;

(e)    Whether Defendants refused to disclose the problems with the Products after it knew of their propensity to harm pets;

(f)    Whether the propensity of the Products to harm pets constitutes a manufacturing or design defect;

(g)    Whether Defendants' conduct constitutes a breach of warranties;

(h)    Whether Defendants' conduct constitutes a breach of contract;

(i)    Whether Class members have been injured by Defendants' conduct;

(j)    Whether Class members have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing, and if so, what is the proper measure and appropriate formula to be applied in determining such damages and restitution, including the availability of emotional distress and medical monitoring damages; and

(k)    Whether Class members are entitled to injunctive relief.

36.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced and competent in the prosecution of class action litigation.

37.    A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted.  Plaintiffs anticipate that no unusual difficulties are likely to be encountered in the management of this class action.

38.    A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.  Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.  If a class or general public action is

not permitted, many Class members will likely receive no remedy for damages suffered as a result of Menu Foods' misconduct.

39.     Defendants have acted and refused to act on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## COUNT I
## STRICT PRODUCTS LIABILITY

40.     Plaintiff hereby incorporates all other allegations in the Complaint into this Cause of Action, except such allegations as may be inconsistent herewith (which are plead in the alternative). Plaintiff alleges this cause of action on behalf of himself and all others similarly situated.

41.     Defendants are strictly liable for supplying a product that is either defective in its manufacture by virtue of the introduction of aminopterin into the Product while under Defendants' control or, alternatively, defective in its design, by virtue of the lack of safeguards necessary to ensure that aminopterin or similar toxins are not introduced into its pet food while under Defendants' control.

42.     Defendants are also strictly liable for failure to warn the public of the known dangers and reasonably foreseeable harm that could result from use of the Product.

43.     Plaintiff, as a pet owner, is a reasonably foreseeable user of the Product, and purchased and used the product in a foreseeable manner, that is, Plaintiff fed pets with the Product. Plaintiff has been damaged, and has suffered losses including the loss of a pet, the expenditure of money for medical care and monitoring of pets, severe emotional distress, and the money spent on the Product itself.

## COUNT II
## NEGLIGENCE

44.    Plaintiff incorporates all other allegations in the Complaint into this cause of action, except such allegations as may be inconsistent herewith (which are plead in the alternative). Plaintiff alleges this cause of action on behalf of himself and all others similarly situated.

45.    Defendants owed a duty to Plaintiff to ensure that its pet foods were not poisonous to pets in the manner of the Products.

46.    Defendants breached their duty of care to Plaintiff by failing to use sufficient quality control, perform adequate testing, proper manufacturing, production, or processing, and failing to take sufficient measure to prevent the Products from being offered for sale, sold, or fed to pets.

47.    *Res ipsa loquitur* applies because Defendants had exclusive control of the relevant instrumentalities, including the Product and manufacturing facilities, and rat poison would not normally be present, absent negligence.

48.    Menu Foods' breaches of duty were the actual and proximate cause of damage to Plaintiff, including the loss of a pet, the expenditure of money for medical care and monitoring of pets, severe emotional distress, and the money spent on the Product itself.

## COUNT III
## BREACH OF WARRANTY

49.    Plaintiff incorporates all other allegations in the Complaint into this cause of action, except such allegations as may be inconsistent herewith (which are plead in the alternative). Plaintiff alleges this cause of action on behalf of himself and all others similarly situated.

50.    Defendants, by calling its product "food" and making other similarly enticing representations as set forth more fully, above, impliedly and / or expressly



warranted that the Products were ingestible and would not sicken and kill the dogs and cats that ate them. Menu Foods also warranted thereby, that its products were fit for the particular purpose of nourishing pets without sickening and killing said pets.

51.    Defendants breached these warranties by virtue of the facts set forth in the body of the Complaint, and Plaintiff was damaged thereby, including the loss of a pet, the expenditure of money for medical care and monitoring of pets, severe emotional distress, and the money spent on the Product itself.

## COUNT IV
## BREACH OF CONTRACT

52.    Plaintiff incorporates all other allegations in the Complaint into this Cause of Action, except such allegations as may be inconsistent herewith (which are plead in the alternative). Plaintiff alleges this cause of action on behalf of himself and all others similarly situated.

53.    The facts as set forth above also constitute the formation and breach of a contract between Plaintiff and Defendants. Alternatively, Plaintiff was necessarily the third party beneficiary of a contract between Defendants and intermediaries from whom Plaintiff purchased the Products. Plaintiff was damaged by Defendants' breaches, as previously set forth.

## COUNT V
## VIOLATIONS OF CONSUMER FRAUD ACT (N.J.S.A. §56:8 *et seq*)

54.    Plaintiff incorporates all other allegations in the Complaint into this cause of action, except such allegations as may be inconsistent herewith (which are plead in the alternative). Plaintiff alleges this cause of action on behalf of himself and all others similarly situated.



55.     The acts as set forth above also constitute violations of the New Jersey Consumer Fraud Act, and Plaintiff has suffered damage thereby, including out of pocket loss and other pecuniary harm, as set forth above.

## COUNT VI
## UNJUST ENRICHMENT

56.     Plaintiff incorporates all other allegations in the Complaint into this cause of action, except such allegations as may be inconsistent herewith (which are plead in the alternative). Plaintiff alleges this cause of action on behalf of himself and all others similarly situated.

57.     As a direct, proximate, and foreseeable result of Defendants' acts and otherwise wrongful conduct, Plaintiff suffered damages. Defendants profited and benefited from the sale of the Products, even as the Products caused Plaintiff to incur damages.

58.     Defendants have accepted and retained these profits and benefits derived from consumers, including Plaintiff, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, consumers were not receiving products of the quality, nature, fitness, or value that had been represented by Defendants or that reasonable consumers expected. Plaintiff purchased pet food that he expected would be safe and healthy for his dog and instead has had to endure the death of his pet.

59.     By virtue of the conscious wrongdoing alleged here, Defendants have been unjustly enriched at the expense of the Plaintiff. Plaintiff is entitled to, and seeks, the disgorgement and restitution of Defendants' wrongful profits, revenues, and benefits, to the extent and in the amount deemed appropriate by the Court. Plaintiff is also entitled to, and seeks such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for the following relief:

A.  An order certifying the Class as defined above;

B.  An award of actual damages, restitution, and/or disgorgement from Defendants of the benefits conferred by Plaintiff and the Class;

C.  Reimbursement of medical and other expenses;

D.  Appropriate injunctive relief;

E.  Pre- and post-judgment interest to the Class;

F.  Reasonable attorneys' fees and costs; and

G.  Such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

**LITE DePALMA GREENBERG & RIVAS LLC**

Joseph J. DePalma /SP

Joseph J. DePalma
Susan D. Pontoriero
Two Gateway Center, 12th Floor
Newark, NJ 07102
Tel: 973.623.3000
Fax: 973.623.0858

DATED:  March 29, 2007

**MILBERG WEISS & BERSHAD LLP**
Jeff S. Westerman
Sabrina S. Kim
One California Plaza
300 South Grand Ave., Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975
Email: jwesterman@milbergweiss.com
skim@milbergweiss.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Plaintiff, by his attorneys, hereby certifies that to the best of his knowledge, the matter in controversy is related to <u>Workman, et al. v. Menu Foods, Inc., et al</u>, Civil Action No. 07-1338(NLH-AMD) and <u>Julie Hidalgo v. Menu Foods, Inc., et al.</u>, to be filed simultaneously herewith. Plaintiff is not currently aware of any other party who should be joined in this action.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

Dated:   March 29, 2007

**LITE DePALMA GREENBERG & RIVAS, LLC**

By:  _____
Joseph J. DePalma
Susan D. Pontoriero
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858

*Attorneys for Plaintiffs*

**LITE DEPALMA GREENBERG & RIVAS, LLC**
Joseph J. DePalma
Susan D. Pontoriero
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tel: (973) 623-3000

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDER NUNEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MENU FOODS LIMITED; MENU FOODS INC.; MENU FOODS MIDWEST CORPORATION; MENU FOODS INCOME FUND; MENU FOODS SOUTH DAKOTA, INC.; and MENU FOODS HOLDINGS, INC.,<br><br>Defendants | Civil Action No. 07CV1490(NLH) |

## CERTIFICATE OF NON-ARBITRABILITY

Joseph J. DePalma, of full age, certifies that pursuant to L. Civ. R. 201.1 the within matter

is not arbitrable, being that the Complaint seeks damages that are in an excess of $150,000.

_Joseph J. DePalma_
Joseph J. DePalma

Dated: March 29, 2007